KIM MORGAN and ADEL AL, Individually and on Behalf of All Others Similarly Situated,

    Plaintiffs,

v.

TRANSWORLD SYSTEMS, INC.,

    Defendant.

Case No.: 17-cv-1420

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Kim Morgan is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Adel Al is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Each plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from each plaintiff debts allegedly incurred for personal, family or household purposes.

6. Each plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included agreements to defer payment.

7. Defendant Transworld Systems, Inc. ("Transworld") is a California corporation with its principal place of business located at 2235 Mercury Way, Suite 275, Santa Rosa, California 95407.

8. Transworld is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. Transworld is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Transworld is a "debt collector" as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *Facts Relating to Plaintiff Morgan*

10. Plaintiff Morgan entered into one or more consumer transactions with "ATI Physical Therapy" ("ATI") or an affiliate or predecessor corporation.

11. Each consumer transaction was incurred for personal medical services.

12. Further, each consumer transaction involved agreements to render services and defer payment. Plaintiff Morgan was not expected to pay at the time medical services were rendered, but was billed at a later date.

13. On or about October 21, 2016, Transworld mailed a debt collection letter to Plaintiff regarding an alleged debt owed to ATI. A copy of this letter is attached as Exhibit A.

14. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

2

15. Exhibit A is a form letter that does not require an envelope because it is a "folded self-mailer." *See Sears, Roebuck & Co. v. United States Postal Serv.*, 134 F. Supp. 3d 365, 370 (D.D.C. Sept. 30, 2015) ("a folded self-mailer is formed from a single sheet of cardstock that is folded once on the right side (the leading edge), addressed on the front, and sealed to make a letter-sized mailpiece.").

16. Folded self-mailers like Exhibit A are eligible for special low postage rates because of the ease of automated processing. *Sears*, 134 F. Supp. 3d at 371.

17. Folded self-mailers like Exhibit A usually use a gumming agent like glue to seal the mailer, which "prevent[s] the open edges from fanning out and jamming high-speed processing equipment." *Sears*, 134 F. Supp. 3d at 371.

18. Where a self-folded mailer is used for a debt collection letter, the letter also must remain sealed to prevents disclosure of the debt and comply with the FDCPA. *See* 15 U.S.C. § 1692c(b).

19. Exhibit A lists a "CURRENT BALANCE DUE."

20. The amount of the "CURRENT BALANCE DUE" and other information specific to the alleged debt in question were disclosed in the location on the self-folded mailer where the gumming agent was used to seal the mailer.

21. As a result of the coincident placement of this information and the gumming agent within Exhibit A, it became impossible to determine the amount that was due once the letter was opened because this information was attached to the gumming agent when it became separated from the face of the letter.

22. Upon information and belief, Defendant deliberately places this information in a location that makes it impossible to read once the letter is opened, with the express purpose of

3

inducing alleged debtors to call Defendant's offices, whereupon Defendant uses high-pressure tactics to induce alleged debtors into paying the debts Defendant is collecting.

23. Sending letters that make it impossible for the debtor to determine the amount of the debt and other critical information specific to the debt is communication in a manner that can reasonably be expected to harass the customer.

24. The unsophisticated consumer would be confused by Exhibit A.

25. Plaintiff Morgan had to spend time and money investigating Exhibit A.

26. Plaintiff Morgan had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

### *Facts Relating to Plaintiff Al*

27. On or about February 13, 2017, Transworld mailed a debt collection letter to Plaintiff Al regarding an alleged debt owed to "ATI PHYSICAL THERAPY" ("ATI"). A copy of this letter is attached to this Complaint as Exhibit B.

28. Each consumer transaction was for personal medical services.

29. Further, each consumer transaction involved agreements to render services and defer payment. PLaintiff Al was never expected to pay at the time medical services were rendered. ATI mailed bills to Plaintiff Al at a later date.

30. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff Al inserted by computer.

31. Upon information and belief, Exhibit B is a form debt collection letter used by Transworld to attempt to collect alleged debts.

32. Exhibit B contains the following statement:

4

> **CURRENT BALANCE DUE: $463.53**

Exhibit B.

33. Exhibit B also contains three payment options that purport to offer Plaintiff Al the opportunity to "pay the debt in full."

34. Exhibit B explains the payment options as follows:

> At Transworld Systems Inc. TSI we are committed to working with you to help resolve this account! We hope you will contact us at the number above and let us prove to you how committed we are to that goal.
>
> There are several options that we can currently offer, and it is our hope that one of them will meet your needs.
> - Option 1 - Make a payment this month of $46.37 and then pay $208.58 each of the next two months and pay your account(s) in full;
> - Option 2 - Make 3 equal consecutive monthly payments of $154.51 and pay your account(s) in full;
> - Option 3 - Make 2 consecutive monthly payments. First payment of $231.76 and then $231.77 next month and pay your account(s) in full;
>
> Please confirm with one of our representatives which option works best for you and we will note your account accordingly.

Exhibit B.

35. However, Exhibit B also states:

> The account balance may be periodically increased due to the addition of accrued interest or other charges, as provided in the agreement with the original creditor, or as otherwise provided by applicable law.

Exhibit B.

36. The representation in Exhibit B that the payment options will "resolve" the account and "pay the account in full" are false, misleading, and confusing to the unsophisticated consumer as the language above states that interest or other charges may be periodically added to the account balance.

37. Thus, it is unclear whether the "consecutive monthly payment" amounts listed in Options 1, 2, and 3 will actually resolve the alleged debt.

38. The unsophisticated consumer would be confused and misled as to whether the payment options are meant to incorporate interest and fees into it, or not.

5

39. <u>Exhibit B</u> fails to state the terms of the payment options in a non-confusing manner.

40. Neither the unsophisticated consumer nor the "competent attorney" could determine from <u>Exhibit B</u> whether the payment options would resolve the alleged debt.

41. <u>Exhibit B</u> is ambiguous and capable of at least two meanings. It is unclear whether completing the "paid in full" payment plans, which will not add up to the actual amount of the debt if interest and other charges are added, would be treated as settlements or as a partial payment against Plaintiff's full balance. <u>Exhibit B</u>.

42. Transworld's language leaves open the possibility that the consumer will make the monthly payments, only to have the entire payment applied to the actual "full balance" resulting in the consumer still owing a portion of the debt.

43. Treating the payments as being short of the actual full amount of the debt would permit ATI or third-party debt collectors hired by ATI to continue to try to collect on the same debt.

44. An alleged debtor could pay the monthly payments and not know whether he or she has resolved the alleged account. <u>Exhibit B</u>. The language is confusing to the unsophisticated consumer.

45. Moreover, the unsophisticated consumer could not determine whether timely making all payments under the proposed plan would result in ATI representing to credit reporting agencies that the account is paid in full, settled in full, or partially paid with outstanding balance.

46. The language stating that "the account balance may be periodically increased due to the addition of accrued interest or other charges" is ambiguous and confusing. The consumer

6

who makes all the requested payments cannot know if Transworld would actually treat and report the debt as settled or paid in full.

47. The consequences of misleading a consumer with respect to settling a debt are material and misleading statements are material false statements under the FDCPA.

48. An account reported to a credit reporting agency as "settled in full" has a greater negative effect on a consumer's credit score than an account reported as "paid in full." Thus, consumers who are able to pay off a balance may wish to pay the entire amount instead of "settle" for pennies less than the full amount of the debt in order to effect an improvement in their credit score.

49. The unsophisticated consumer would be confused by Exhibit B.

50. Plaintiff had to spend time and money investigating Exhibit B.

51. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit B.

### *THE FDCPA*

52. The FDCPA, 15 U.S.C. § 1692-1692p, is a consumer protection amendment to the Consumer Credit Protection Act, that was adopted as Title VIII of the Consumer Credit Protection Act. *See e.g., Baldwin v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, Case No. 98-C-4280, 1999 U.S. Dist. LEXIS 6933, at *13, 1999 WL 284788, at *4 (N.D. Ill. Apr. 26 1999) ("a key function of the FDCPA provisions of the Consumer Credit Protection Act was to eliminate practices that 'contribute to the number of personal bankruptcies.' ").

53. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*,

7

No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

54. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection

8

practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

55. The FDCPA prohibits debt collectors from making confusing statements in a debt collection letter, with the purpose of orally disclosing the information in a non-confusing way. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) ("to authorize debt collectors to comply orally would be an invitation to just the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to.").

56. 15 U.S.C. § 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

57. 15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of---the character, amount, or legal status of any debt."

58. 15 U.S.C. § 1692e(10) specifically prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt."

59. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

## *THE WCA*

60. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

61. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country,"

and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

62. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

63. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

64. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

65. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

66. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court

10

analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

67. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

68. Wis. Stat. § 427.104(1)(g) states that "a debt collector may not . . . communicate with the customer . . . in such a manner as can reasonably be expected to . . . harass the customer."

69. Although the FDCPA does not authorize injunctive or declaratory relief, *see Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 507 n.3 (D. Md. Mar. 11, 2013), these forms of relief are available under the WCA. Wis. Stat. §§ 426.109(1); 426.110(4)(e); 426.110(6)(b).

70. The WCA expressly authorizes individual actions to enjoin "any person who in . . . enforcing consumer credit transactions engages in . . . False, misleading, deceptive, or unconscionable conduct in enforcing debts . . . arising from consumer credit transactions." Wis. Stat. § 426.110(2)(c); *see* Wis. Stat. § 426.110(3).

71. The WCA also authorizes "any customer affected by a violation of chs. 421 to 427 and 429 . . . or by a violation of the federal consumer credit protection act . . . [to] bring a civil action on behalf of all persons similarly situated, for actual damages by reason of such conduct or violation, together with penalties as provided in sub. (14), reasonable attorney fees

11

and other relief to which such persons are entitled under chs. 421 to 427 and 429." Wis. Stat. § 426.110(1).

72. The WCA authorizes customers to bring class actions for injunctive relief to cure violations of Wis. Stat. § 427.104(1)(g).

## **COUNT I – FDCPA**

73. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

74. Count I is brought on behalf of Plaintiff Morgan.

75. In Exhibit A, Defendant placed critical information specific to the alleged debt in a location where that information would become attached to the self-folded mailer's gumming agent, making it impossible for the debtor to read that information once the letter was opened.

76. Defendant placed this information in this location with the purpose of inducing alleged debtors to contact Defendant, whereupon Defendant would engage in high-pressure tactics in order to induce alleged debtors to pay debts that Defendant was collecting, possibly at the expense of payment to other debt collectors who were not engaging in such deceptive conduct.

77. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f.

## **COUNT II – FDCPA**

78. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

79. Count II is brought on behalf of Plaintiff Al.

80. Exhibit B contains a payment plan offer that is misleading.

81. If a consumer chooses to mail in payments in an attempt to take advantage of one of the "Paid in Full" monthly installment plans listed on the letter, Defendant could, under one interpretation of Exhibit B, apply the payments toward the actual "full balance" instead of settling the debt.

82. It is unclear whether the creditor or Transworld would continue to collect any interest or other charges added to the debt if the consumer paid the full amount of a "paid in full" payment plan.

83. It is also unclear whether completing the "paid in full" payment plans, which will not add up to the actual amount of the debt if interest and other charges are added, would be treated as "settlements for less than the full balance" for credit reporting purposes because the payments would be short of the actual balance.

84. Exhibit B misleads the unsophisticated consumer and encourages payments that do not actually settle the alleged debt, allowing ATI or third-party debt collectors hired by ATI to continue collecting the remaining balance.

85. Exhibit B also confuses the consumer as to whether an account would be reported to credit reporting agencies as "settled in full" or "paid in full" after completing of the payment plans, as the payments are short of the balances.

86. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f.

## COUNT III – FDCPA

87. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

88. Count III is brought on behalf of Plaintiff Al.

13

89. The statements in Exhibit B that Transworld will consider the debt paid in full if Plaintiff Al completes one of the monthly payment plans, which fail to add up to the full amount of the debt after the addition of interest and other charges, is inherently or apparently contradictory.

90. The unsophisticated consumer would have no idea how a debt could be paid in full when the full balance was not actually paid.

91. The language is intended to make the consumer call Transworld, subjecting him or her to additional collection efforts and high-pressure collection tactics.

92. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692f.

## COUNT IV – WCA

93. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

94. Count IV is brought on behalf of Plaintiff Morgan.

95. In Exhibit A, Defendant placed critical information specific to the alleged debt in a location where that information would become attached to the self-folded mailer's gumming agent, making it impossible for the debtor to read that information once the letter was opened.

96. Defendant placed this information in this location with the purpose of inducing alleged debtors to contact Defendant, whereupon Defendant would engage in high-pressure tactics in order to induce alleged debtors to pay debts that Defendant was collecting, possibly at the expense of payment to other debt collectors who were not engaging in such deceptive conduct.

97. Defendant violated Wis. Stat. § 427.104(1)(g).

## COUNT V – WCA

98. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

99. Count V is brought on behalf of Plaintiff Morgan.

100. In Exhibit A, Defendant placed critical information specific to the alleged debt in a location where that information would become attached to the self-folded mailer's gumming agent, making it impossible for the debtor to read that information once the letter was opened.

101. Defendant placed this information in this location with the purpose of inducing alleged debtors to contact Defendant, whereupon Defendant would engage in high-pressure tactics in order to induce alleged debtors to pay debts that Defendant was collecting, possibly at the expense of payment to other debt collectors who were not engaging in such deceptive conduct.

102. Defendant violated Wis. Stat. § 426.110(2)(c).

## CLASS ALLEGATIONS

103. Plaintiffs bring this action on behalf of the following classes.

104. Class I ("Gumming Agent Class") consists of: (a) all natural persons in the State of Wisconsin (b) to whom Defendant Transworld sent a collection letter, (c) in the form of Exhibit A, (d) between October 17, 2016 and October 17, 2017, inclusive, (e) that was not returned by the postal service. Plaintiff Morgan is the named representative for Class I.

105. Class II ("Confusing Settlement Class") consists of: (a) all natural persons in the State of Wisconsin (b) to whom Defendant Transworld sent a collection letter, (c) in the form of Exhibit A, (d) between October 17, 2016 and October 17, 2017, inclusive, (e) that was not returned by the postal service. Plaintiff Al is the named representative of Class II.

106. Each Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

107. There are questions of law and fact common to the members of each Class, which common questions predominate over any questions that affect only individual class members. The predominant common question for Class I is whether <u>Exhibit A</u> violates the FDCPA and WCA. The predominant common question for Class II is whether <u>Exhibit B</u> violates the FDCPA.

108. Plaintiffs' claims are typical of the claims of the members of each Class. All are based on the same factual and legal theories.

109. Plaintiffs will fairly and adequately represent the interests of the members of each Class. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

110. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

111. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Classes and against Defendant for:

(a) declaratory relief;

(b) injunctive relief;

(c) actual damages;

(d) statutory damages;

(e) attorneys' fees, litigation expenses and costs of suit; and

(f) such other or further relief as the Court deems proper.

Dated: October 17, 2017

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN (1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com